IN THE SUPERIOR COURT OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| LIZABETH GLASS AND BRIAN REBESCHINI,<br><br>Plaintiffs,<br><br>vs.<br><br>CARROLL'S CREEK APARTMENTS PROPERTY OWNER, LLC, JRK RESIDENTIAL GROUP, INC. dba TWO COAST LIVING and I.Q. DATA INTERNATIONAL, INC.<br><br>Defendants. | NO.<br><br>**COMPLAINT FOR VIOLATIONS OF 15 U.S.C. § 1692 ET SEQ. AND RCW CHAPTERS 19.16 AND 19.86 ET SEQ.** |

COME NOW Plaintiffs, Lizabeth Glass and Brian Rebeschini, by and through counsel, who allege:

### I.   PARTIES AND JURISDICTION

1. Plaintiff Lizabeth Glass is an individual who, in June 2021, leased an apartment from certain Defendants (Carroll's Creek Property Owner, LLC and its property manager JRK Residential Group, Inc.) in Marysville, WA. Subsequent to her tenancy, these Defendants retained Defendant I.Q. Data International, Inc. to attempt to collect an alleged debt from Ms.

Complaint - 1

ANDERSON | SANTIAGO
207B SUNSET BLVD. N.
RENTON, WA 98057
(206) 395-2665 / F (206) 395-2719

1  Glass.

2      2.     Plaintiff Brian Rebeschini is an individual who, in June 2021, leased an apartment
3  from the above-identified Defendants in Marysville, WA. Subsequent to his tenancy,
4  Defendants retained Defendant I.Q. Data International, Inc. to attempt to collect an alleged debt
5  from Mr. Rebeschini

6      3.     Defendant Carroll's Creek Property Owner, LLC ("CCPO"), a foreign limited
7  liability company, UBI #604131727, is a landlord (RCW 59.18.030) doing business in
8  Washington who failed to properly discharge its duties under the Washington Residential
9  Landlord Tenant Act ("RLTA"). CCPO's registered agent is National Registered Agents, 711
10 Capitol Way S. # 204, Olympia, WA 98501.

11     4.     Defendant JRK Residential Group, Inc. dba Two Coast Living ("JRK"), a foreign
12 profit corporation UBI #603321649, is a landlord (RCW 59.18.030) doing business in
13 Washington who failed to properly discharge its duties under the Washington Residential
14 Landlord Tenant Act ("RLTA"). JRK's registered agent is National Registered Agents, 711
15 Capitol Way S. # 204, Olympia, WA 98501.

16     5.     Defendant I.Q. Data International, Inc. ("IQ Data"), a Washington Corporation,
17 UBI # 602-306-960, is a debt collector and licensed collection agency doing business in
18 Washington, and who repeatedly attempted to collect an alleged debt from the Plaintiffs. IQ
19 Data's registered agent is Corporation Service Company, 300 Deschutes Way SW Ste 208 MC-
20 CSC1, Tumwater, WA, 98501.

21     6.     Jurisdiction over Defendants is proper as Defendants are doing business in
22 Washington State.

23                                    **II.**     **FACTS**

7. In June 2021, Plaintiffs Lizabeth Glass and Brian Rebeschini entered an agreement with Defendants CCPO and JRK to lease an apartment at "Carroll's Creek Apartments" from June 16, 2021 through June 15, 2022, a property owned by CCPO and managed by JRK. The first month's partial rent was $1,054.00, followed by monthly payments of $2,108.00.

8. The lease agreement contained a provision requiring a security deposit in the amount of $500.00, which Plaintiffs paid.

9. Immediately upon moving in, Plaintiffs found a myriad of issues with the property they had agreed to rent. Such issues included:

- Extensive mold in the garage area
- Lack of hot water and little water pressure
- Non-working oven and dishwasher
- Piles upon piles of garbage stacked near community waste bins
- Animal waste throughout the complex

10. While Plaintiffs requested maintenance on the issues in the home, they were never properly remedied or never addressed at all.

11. Plaintiffs were dismayed and completely disappointed in the landlords' refusal to remedy the poor conditions, so on November 1, 2021 they gave notice to CCPO and JRK that they would be moving out at the end of the month.

12. On November 30, 2021, Plaintiffs moved out of the property as promised, cleaning the carpet using professional cleaning equipment.

13. Upon moving out, Plaintiffs expected their deposit to be applied to any incidentals, and to receive a refund for the difference.

14. Plaintiffs never received any communication from CCPO or JRK, and never received a refund of their deposit, however, on information and belief, the property was

Complaint - 3

immediately filled by another tenant.

**Instead of a Security Deposit Refund, Plaintiffs are Thrust Into Collections**

15. Instead of receiving a refund of their deposit, or any communication from CCPO or JRK, in October 2023, Plaintiffs began receiving contacts from debt collector and Defendant IQ Data.

16. In early October 2023, Plaintiffs received a phone call from a representative of IQ Data. Plaintiffs were shocked that IQ Data was attempting to collect almost $4,000. When asked why the balance was so high, IQ Data's representative would only tell Plaintiffs that it was because the lease was broken, giving no further details.

17. A few days later, IQ Data sent a letter, again claiming that Plaintiffs owed $3,952.17. *See* October 5, 2023 collection letter attached as **Exhibit A**. The letter contained no explanation for the amount supposedly owed.

18. A few days after receiving the letter, Plaintiffs called IQ Data to discuss the alleged debt. Unfortunately, IQ Data refused to provide additional details.

19. On October 18, 2023, Plaintiffs sent a letter to IQ Data, invoking their rights under 15 U.S.C. § 1692g for validation of the debt. The letter was delivered to IQ Data on October 20, 2023. To date, IQ Data has not responded to the validation request.

20. Meanwhile, IQ Data issued adverse credit reporting, asserting that Plaintiffs owed the alleged debt. Despite receiving the letter disputing the debt pursuant to 15 U.S.C. § 1692g IQ Data continued its credit reporting. In mid-November, IQ Data updated the amount owed to reflect additional interest, despite never having validated the debt.

21. Because IQ Data refused to explain or validate the debt, Plaintiffs learned through alternative methods that the debt was comprised of $4,216.00 for a "lease break fee," $85.00 for

a carpet cleaning fee, and $563.22 in interest minus their $500.00 deposit and another "prepaid" amount of $322.05.  *See* statement of security deposit attached as **Exhibit B**.

22. Plaintiffs were extremely confused, because they professionally cleaned the carpet already, had given notice, and had found that someone had moved into the residence soon after they had moved out.

23. In circumstances like that of the Plaintiffs and setting aside any specific damages (such as costs to make lawful repairs), the RLTA limits a landlord's recovery to rent that would otherwise be lost when a tenant abandons the lease, provided the landlord makes reasonable efforts to mitigate damages (such as by finding a new tenant). *Gebreseralse v. Columbia Debt Recovery*, 24 Wn. App. 2d 650, 660 (2022); RCW 59.18.310.

24. Essentially, given that the RLTA already provides specific remedies for abandonment of a lease, a flat fee imposed upon the breaking of (or perceived breaking of) a lease agreement is an additional windfall to the landlord and thus not permitted by statute. *Id.* at 662. Thus, charging a flat lease break fee, rather than for whatever time the apartment remained unoccupied, violates the RLTA.

25. Moreover, CCPO and JRK had retained the entirety of Plaintiffs' security deposit, ostensibly reducing the balance of a debt which they did not owe. The result was the same – Defendants unlawfully retained the security deposit. To summarize, Defendants had assessed an illegal termination fee, and then retained Plaintiffs' full security deposit to cover some of those charges.

26. As a result of Defendants' actions detailed above, Plaintiffs have incurred expenses in seeking and retaining counsel in connection with ascertaining their legal rights and responsibilities, have suffered damaged credit, and have suffered financial uncertainty, unease,

and distress caused by the false, improper, and confusing nature of the debt and related collection efforts.

### III.  CAUSES OF ACTION

**GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

27. With respect to the alleged debt, Plaintiffs are consumers as defined by 15 U.S.C. § 1692a(3) and each Defendant is a debt collector as defined by 15 U.S.C. § 1692a(6).

28. With respect to the alleged debt, Plaintiffs are "debtors" as defined by RCW 19.16.100(8) and each Defendant is a collection agency as defined by RCW 19.16.100(4).

29. For claims arising under the Fair Debt Collection Practices Act, such claims are assessed using the "least sophisticated debtor" standard. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007).

**Count 1 – as to CCPO and JRK**

30. The landlord shall pay any refund due from a tenant's security deposit within twenty-one days after termination of the rental agreement and vacation of the premises (or twenty-one days after the landlord learns of abandonment). RCW 59.18.280.

31. A court may, in its discretion award up to two times the amount of the deposit for the intentional refusal of the landlord to give the refund due. RCW 59.18.280.

32. Here, CCPO and JRK did not return a dime of any of Plaintiffs' security deposit, even though anything they could have owed after moving out did not exceed the amount of the deposit (on information and believe a tenant had moved in immediately after Plaintiffs moved out). CCPO and JRK rationalize this as having applied the deposit to a debt which was not owed.

33. In addition to the foregoing, unlawfully retaining a security deposit

simultaneously violates 59.18.280's requirement that the deposit be returned or a statement provided within 21 days. Here, no such lawful statement was provided, and the deposit was illegally withheld. Therefore, in the alternative, CCPO and JRK violated 59.18.280.

34.     CCPO and JRK's retention of a security deposit (via forfeiture, or applying it to amounts not owed) violated RCW 59.18.280.

### Count 2 – Consumer Protection Act Violation as to CCPO and JRK

35.     CCPO and JRK's actions in charging Plaintiffs a lease break fee rather than for actual damages is illegal, as a landlord may not abdicate its responsibility to mitigate damages under RCW 59.18.310.  Thus, the practice of charging a lease break fee is an unfair or deceptive and occurred in the conduct of commerce, namely, the leasing and management of residential real estate.

36.     In this case, on information and belief, CCPO and JRK had found a new tenant shortly after Plaintiffs vacated the apartment, yet charged Plaintiffs a flat lease break fee in the amount of $4,216 **and** sent their account to collections.

37.     The effect of these actions resulted in CCPO and JRK attempted to obtain double their profit on the apartment, charging a lease break fee while simultaneously charging a new tenant.

38.     Plaintiffs were injured because they were subjected to unlawful collection efforts as a result of CCPO and JRK's double-dipping.

39.     But for CCPO's and JRK's actions, Plaintiffs would not have been injured (by way of having their credit damaged, having to contend with a debt collector, having their security deposit applied to amounts not due and owing, and incurring expenses in determining their legal rights, etc.).

Complaint - 7

ANDERSON | SANTIAGO
207B SUNSET BLVD. N.
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

40. JRK and CCPO are liable for violations of the Consumer Protection Act

**Count 3 (and all subcounts) – as to IQ Data**

41. A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. This includes the false representation of the character, amount, or legal status of a debt (§ 1692e(2)), the threat to take any action which cannot be legally taken (§ 1692e(5)), communicating to any person credit information which is false or should be known to be false (§ 1692e(8)), or the use of any false representation or deceptive means to collect or attempt to collect a debt (§ 1692e(10)).

42. Defendant IQ Data used false, deceptive, or misleading representations or means in connection with the collection of an alleged debt when it, among other actions:

    a) Demanded, in writing and by phone, that Plaintiffs pay amounts which were not owed, including an illegal lease break fee;

    b) Issued adverse credit reporting demanding amounts not owed;

    c) Attempted to leverage false balances and improper supporting documents containing unlawful accounting and lease terms against Plaintiff's creditworthiness to obtain a payment.

43. Therefore, Defendant IQ Data violated 15 U.S.C. § 1692e, and/or its subsections, on numerous occasions.

**Count 4 (and all subcounts) – as to IQ Data**

44. A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

45. Plaintiffs reallege the allegations in Count 3 *supra*, as constituting unfair and unconscionable means to collect a debt.

46. In summary, the Defendant IQ Data therefore violated 15 U.S.C. § 1692f and/or § 1692f(1) on numerous occasions.

### Count 5 – as to IQ Data

47. If a consumer notifies the debt collector in writing that the debt is disputed within the thirty-day period described in 15 U.S.C. § 1692g(a), the debt collector shall cease collection of the debt until it obtains verification of the debt.

48. Here, IQ Data received a dispute and validation request within the thirty-day time period, yet as of this writing, IQ Data has failed to provide validation to Plaintiffs.

49. However, in mid-November, IQ Data continued its collection efforts by updating its credit reporting on both Plaintiffs' credit, increasing the balance due to interest.

50. Defendant IQ Data therefore violated 15 U.S.C. § 1692g.

### Count 6 – Violation of the WCAA as a CPA Violation

51. Violations of RCW 19.16.250 are per se violations of the Consumer Protection Act ("CPA"), RCW chapter 19.86.[1] *See* RCW 19.16.440. RCW 19.86.090 provides for treble damages (to a limit of $25,000) and attorney's fees.

52. Because RCW Chapter 19.16 is enforced through RCW 19.86 *et seq.*, the below counts alleging violations of RCW Chapter 19.16 are therefore CPA violations.

53. Even minimal or nominal damages constitute "injury" under the CPA. *Panag*, 166 Wn.2d at 57. A plaintiff need not prove any monetary damages at all, as even "unquantifiable damages" suffice to establish "injury" for purposes of the CPA. *Id.* (citing *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740 (1987

---

[1] *See Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53 (2009) ("Consumer debt collection is a highly regulated field. When a violation of debt collection regulations occurs, it constitutes a per se violation of the CPA…").

54. RCW 19.16.250(21) prohibits the collection, or attempted collection, of any amounts in addition to the principal of a claim other than allowable interest, collection costs, or handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable court costs.

55. Here, Defendant IQ Data demanded money on numerous occasions for amounts that were not owed through phone calls, letters, and credit reporting.

56. IQ Data also added interest to the balance that was not owed.

57. Each attempt to collect money from Plaintiffs constitutes a separate attempt to collect amounts obviously not owed.

58. Defendant therefore violated RCW 19.16.250(21) upon each debt collection attempt.

### Count 7 – Injunctive Relief as to all Defendants

59. A plaintiff may seek injunctive relief for violations of the Consumer Protection Act. RCW 19.86.090. Plaintiffs do seek injunctive relief from this Court which would enjoin Defendant from collecting debts in the manner described above from both Plaintiffs and any other person similarly situated. *Scott v. Cingular Wireless*, 160 Wn. 2d 843, 853 (2007).

60. Plaintiffs seek an injunction prohibiting CCPO and JRK from assessing illegal lease break fees, contrary to Washington law, from charging tenants for amounts that were already mitigated, and from sending such accounts to collection agencies.

61. Additionally, Plaintiffs seek an injunction prohibiting Defendant IQ Data from its unlawful collection tactics, including but not limited to demanding money that is not owed and reporting inflated amounts to alleged debtors' credit.

62. Plaintiffs have reason to believe these actions may constitute a pattern and

practice of behavior and have impacted other individuals similarly situated.

63. Injunctive relief is necessary to prevent further injury to Plaintiff and to the Washington public as a whole.

64. Injunctive relief should therefore issue as described herein.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1. For Judgment against Defendants for actual damages.

2. For statutory damages of $1,000.00, per Plaintiff for FDCPA violations.

3. For double damages pursuant to RCW 59.18.280.

4. For statutory damages of $7,500.00 per violation, for Washington Collection Agency Act and Consumer Protection Act violations.

5. For treble damages, pursuant to RCW 19.86.090, calculated from the damages determined by the court.

6. For costs and reasonable attorney's fees as determined by the Court pursuant to 15 U.S.C. 1692k(a)(3), RCW 19.86. et seq., and RCW 59.18.280.

7. For injunctive relief pursuant to RCW 19.86.090 as described above.

Respectfully submitted this 27th day of November, 2023.

ANDERSON SANTIAGO, PLLC

By:_____
T. Tyler Santiago, WSBA No. 46004
Jason D. Anderson, WSBA No. 38014
Attorneys for Plaintiffs
207B Sunset Blvd. N.
Renton, WA 98065
(206) 395-2665
(206) 395-2719 (fax)

Complaint - 11

# EXHIBIT A

# I.Q. Data International, Inc.

21222 30th Drive SE, Suite 120, Bothell, WA 98021-7012
Hours: Monday-Tuesday, 9AM TO 6PM PST, Wednesday-Friday, 8AM TO 5PM PST • Toll Free 888-248-2509
Send all Written Disputes to: P.O. Box 340, Bothell, WA 98041-0340

To: BRIAN REBESCHINI
5616 Evergreen Way
Everett, WA 98203-3877

Date: 10/05/23

Reference: ▇▇▇▇▇▇

**IQ Data is a debt collector.** We are trying to collect a debt that you owe to CARROLLS CREEK LANDING (WA). We will use any information you give us to help collect the debt.

## Our information shows:

You have a remaining balance owed to CARROLLS CREEK LANDING (WA) from applying to, cosigning for, or residing in a rental unit, or from a related surety bond.

| | | |
|---|---|---|
| As of 11/30/21, you owed: | $ | 3,388.95 |
| Between 11/30/21 and today: | | |
| You were charged this amount in interest: + | $ | 563.22 |
| You were charged this amount in fees: + | $ | 0.00 |
| You paid or were credited this amount toward the debt: − | $ | 0.00 |
| **Total amount of the debt now:** | **$** | **3,952.17** |

## How can you dispute the debt?

- Call or write to us by 11/15/23, to dispute all or part of the debt. If you do not, we will assume that our information is correct.
- If you write to us by 11/15/23, we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents.

## What else can you do?

- Write to ask for the name and address of the original creditor, if different from the current creditor. If you write by 11/15/23, we must stop collection until we send you that information. You may use the form below or write to us without the form.
- Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law. For instance, you have the right to stop or limit how we contact you.
- Contact us about your payment options.

**Notice: See reverse side for important information.**

---

IQD
P.O. Box 1280
Oaks PA 19456-1280
ADDRESS SERVICE REQUESTED

BRIAN REBESCHINI
5616 Evergreen Way
Everett WA 98203-3877

## How do you want to respond?
*Check all that apply:*
☐ I want to dispute the debt because I think:
  ☐ This is not my debt.
  ☐ The amount is wrong.
  ☐ Other (please describe on reverse or attach additional information).
☐ I want you to send me the name and address of the original creditor.
☐ I enclosed this amount: $ _____

Make your check payable to *IQ Data International* or visit iqdata-inc.com. Include the reference number ▇▇▇▇▇

**Mail this form to:**
IQ Data International
P.O. Box 340
Bothell, WA 98041-0340

Your outstanding principal balance will accrue interest at a rate of 009.00 percent per annum.

As of the date of this letter, you owe $3,952.17. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown on this letter, an adjustment may be necessary after we receive your payment, in which event we will inform you before depositing the payment for collection. For further information, write to us or call 1-888-248-2509.

# EXHIBIT B

| | | | | |
|---|---|---|---|---|
| **From:** | CARROLL'S CREEK LANDING<br>18111 25th Ave NE<br>Marysville, WA 98271 | | **Statement of Security Deposit Accounts** | |
| | | | Dec 06, 2021 | |
| | | | Account: ▮▮▮▮ | |
| | | | **Residents:** | |
| **To:** | Brian D. Rebeschini<br>5616 Evergreen Way<br>Everett, WA 98203 | | Brian D. Rebeschini<br>Lizabeth Glass | |
| **Agreement:** | Lease begins 06/16/21<br>Lease ends 06/15/22<br>Move-in 06/16/21<br>Notice 11/01/21<br>Move-out 11/30/21 | | **Monthly Charges:** | |
| | | | CAM - Residential | 25.00 |
| | | | CORNER UNIT/END UNIT | 20.00 |
| | | On Hand: | RENTAL INCOME | 322.05 |
| | | | SECURITY DEPOSIT | 500.00 |
| | | | Utility Sec Dep | 90.00 |
| | | | | 912.05 |
| | | Balances Due: | | 0.00 |
| | | | | 0.00 |
| | | New Charges: | Lease Break Fee | 4,216.00 |
| | | | Carpet Clean | 85.00 |
| | | | | 4,301.00 |
| | | odas | | |
| **Summary:** | | | Total Deposits | 590.00 |
| | | | Total Prepaid | 322.05 |
| | | | Applied to Due | 0.00 |
| | | | Applied to Other | 912.05 |
| | | | Refunded | 0.00 |
| | | | Due Property | 3,388.95 |

If you should have any questions regarding this statement, please contact our office. The Leasing Office phone number is (360) 652-4488.

Thank you.